IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JOSEPH DALE HUNEYCUTT,           )
                                  )
                Petitioner,       )
                                  )
        v.                        )    1:12CV1052
                                  )
RICHARD L. NEELY,                 )
                                  )
                Respondent.       )

**MEMORANDUM OPINION AND ORDER**

**Auld, Magistrate Judge**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 2.) On November 9, 1992, in the Superior Court of Davidson County, Petitioner pled guilty to two counts of first degree statutory sex offense and six counts of indecent liberties with a child in cases 92 CRS 2500, 4119, 4594, 5284, 5286, 5391, 9722 and 9744. (Docket Entry 2, ¶¶ 1-6; see also Docket Entry 2-2 at 21-28.)[1] The trial court consolidated the statutory sex offenses into one Class B felony and sentenced Petitioner to life imprisonment. (Docket Entry 2, ¶ 3; see also Docket Entry 2-2 at 21-22.) The trial court also consolidated the six indecent liberties offenses into two Class H felonies and sentenced Petitioner to two consecutive terms of three years' imprisonment. (Docket Entry 2, ¶ 3; see also Docket Entry 2-2 at 23-26.) Petitioner did not pursue a direct appeal. (Docket Entry 2, ¶ 9.)

---

[1] For portions of the Petition lacking paragraph numbers, pin citations refer to the page number in the footer appended to said document by the CM/ECF system.

Nearly 20 years later, Petitioner submitted a pro se motion for appropriate relief ("MAR") to the state trial court (Docket Entry 2, ¶¶ 11, 12(a); see also Docket Entry 2-1), which he dated as signed on March 23, 2012 (see Docket Entry 2-1 at 56), and which that court accepted as filed on March 28, 2012 (see Docket Entry 2-2 at 42 (indicating date filed)). The trial court summarily denied the MAR by order dated April 2, 2012. (Docket Entry 2, ¶ 12(a)(7), (8); see also Docket Entry 2-2 at 42.) Petitioner then submitted a pro se Motion to Appoint Counsel to the trial court (Docket Entry 2-2 at 43-44; see also Docket Entry 2, ¶ 12(b)), which he dated as signed on March 26, 2012 (see Docket Entry 2-2 at 44), and which that court accepted as filed on April 2, 2012 (see Docket Entry 2-2 at 45 (indicating date filed)). The trial court denied that motion by order dated April 13, 2012, and filed April 16, 2012. (Id.; see also Docket Entry 2, ¶ 12(b)(7), (8).) Thereafter, Petitioner submitted a Motion to Alter or Amend the Judgment to the trial court (Docket Entry 2-2 at 46-50; see also Docket Entry 2, ¶ 12(c)), which he dated as signed on May 14, 2012 (Docket Entry 2-2 at 50), and which that court accepted as filed on May 30, 2012 (Id. at 53 (indicating date filed)). The trial court denied that motion by order dated June 5, 2012, and filed June 7, 2012. (Id.; see also Docket Entry 2, ¶ 12(c)(7), (8).)

Petitioner then filed a pro se petition for a writ of certiorari with the North Carolina Court of Appeals (Docket Entry 2, ¶ 12(d); see also Docket Entry 2-2 at 56-64), which he dated as submitted on July 9, 2012 (Docket Entry 2-2 at 63, 68-69), and

which that court received as filed on July 11, 2012 (id. at 70) (indicating date filed). The Court of Appeals denied Petitioner's certiorari petition by order dated July 24, 2012. (Id.)

Petitioner thereafter submitted his Petition in this Court (Docket Entry 2), which he dated as signed on September 20, 2012 (id. at 57), and which the Court stamped as filed on September 21, 2012 (id. at 1). Respondent moved to dismiss the Petition on statute of limitation grounds. (Docket Entry 5.) In response, Petitioner filed an "Answer to Respondent's Initial Answer to Habeas Corpus," a "Motion to Grant on Statutes to Habeas Corpus," and various materials in support. (Docket Entries 9-16, 18, 19.) The Motion and its supporting materials contain arguments directed toward the timeliness of the Petition; therefore, the Court will construe these documents as part of Petitioner's response in opposition to Respondent's instant Motion to Dismiss. The parties have consented to disposition of this case by a United States Magistrate Judge. (See Docket Entry 21.)

## **Petitioner's Claims**

Petitioner raises ten claims for relief in his Petition: (1) the first degree statutory sex offense indictments are improper because no penetration occurred; (2) the victims gave untruthful testimony; (3) he suffered community and prosecutorial vindictiveness; (4) he faced multiple charges and punishments in a single prosecution ("cumulative punishments"); (5) his indictments were duplicitous because they charged two or more distinct offenses in single counts; (6) the indictments were multiplicitous because

-3-

they charged the same offense in more than one count; (7) a presumption of prosecutorial vindictiveness attaches due to the number of charges; (8) the multiplicitous indictments and the victims' untruthful testimony caused prejudice; (9) his sentence was based on prejudicial evidentiary rulings which punished him twice for the same offenses; and (10) he received ineffective assistance of counsel in that his trial counsel misrepresented the consequences of his guilty plea, including the length of his prison sentence. (Docket Entry 2 at 8-9, 12, 15-16, 19-20, 23, 26-27, 31-32, 35-37, 40-42, 45-49.)

## **Discussion**

Respondent moves for dismissal of the Petition on the grounds that the Petition was filed[2] outside of the one-year limitation period. 28 U.S.C. § 2244(d)(1). In order to assess Respondent's statute of limitation argument, the Court first must determine when Petitioner's one-year period to file his § 2254 Petition commenced.

---

[2] "In [Houston v. Lack, 487 U.S. 266 (1988)], the Supreme Court held that a *pro se* prisoner's notice of appeal is filed on the date that it is submitted to prison officials for forwarding to the district court, rather than on the date that it is received by the clerk." Morales-Rivera v. United States, 184 F.3d 109, 110 (1st Cir. 1999). At least eight circuits "have applied th[is] prisoner mailbox rule to [establish the 'filing' date of] motions under 28 U.S.C. § 2254 or § 2255." Id. at 110-11 & n.3. In two published opinions issued since that consensus emerged, however, the United States Court of Appeals for the Fourth Circuit has declined to decide whether the prison mailbox rule applies in this context. See Allen v. Mitchell, 276 F.3d 183, 184 n.1 (4th Cir. 2001) ("Allen's petition was dated March 9, 2000, and it should arguably be treated as having been filed on that date. Cf. United States v. Torres, 211 F.3d 836, 837 n.3 (4th Cir. 2000) (declining to decide whether prison mailbox rule applies to filing of federal collateral review applications in district court). We take no position on that question here."); but see Smith v. Woodard, 57 F. App'x 167, 167 n.* (4th Cir. 2003) (implying that Houston's rule governed filing date of § 2254 petition); Ostrander v. Angelone, 43 F. App'x 684, 684-85 (4th Cir. 2002) (same). Because the difference between the date Petitioner signed his Petition (i.e., the earliest date he could have given it to prison officials for mailing) and the date the Clerk received it would not affect disposition of the timeliness issue, the Court need not consider this matter further.

-4-

In this regard, the United States Court of Appeals for the Fourth Circuit has explained that:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period <u>begins to run from</u> the latest of several potential starting dates:
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

<u>Green v. Johnson</u>, 515 F.3d 290, 303-04 (4th Cir. 2008) (emphasis added).

Petitioner appears to assert that the limitation period described in subparagraph (B) should apply to the instant Petition. In a section entitled, "Timeliness of Petition," Petitioner recites the language of subparagraph (B)[3] without identifying either the alleged State-created impediment or the date of removal of any such impediment. (Docket Entry 2, ¶ 19.) In a later-filed brief

---

[3] Notably, Petitioner attempted to include the North Carolina Constitution as a basis of violation by adding the words "and North Carolina" into the language of § 2244(d)(1)(B). (Docket Entry 2 at 56.) The statute permits only State impediments that violate federal law or the <u>United States</u> Constitution to delay the commencement of the statute of limitations. 28 U.S.C. § 2244(d)(1)(B).

-5-

following Respondent's Motion to Dismiss (Docket Entry 11), Petitioner suggests that his lack of access to a law library constituted a State impediment to filing for federal habeas relief. (See id. at 7.) Petitioner further contends that his incarceration represented a "civil disability" that amounted to a State-created impediment to filing the instant Petition. (See id. at 7-8.) These arguments lack merit.

Even under the liberal construction due to a pro se litigant, see Haines v. Kerner, 404 U.S. 519, 520-21 (1972), neither of Petitioner's allegations demonstrate that the limitations period proscribed by subparagraph (B) should apply in this case. First, Petitioner's lack of access to a law library does not trigger application of subparagraph (B). Under well-settled Supreme Court precedent, the absence of law libraries does not violate the Constitution or any other federal law, because inmates in this State have access to North Carolina Prisoner Legal Services, Inc. See Bounds v. Smith, 430 U.S. 817 (1977) (ruling that state only has an obligation to provide either prison law libraries or assistance from persons trained in the law), overruled on other grounds by Lewis v. Casey, 518 U.S. 343, 354 (1996). Second, although Petitioner's incarceration is State-imposed, he has failed to show how such incarceration impeded his ability to timely file the instant Petition. Petitioner managed to file his MAR and several other collateral filings in the state courts, as well as the instant Petition and numerous subsequent filings in this Court. Petitioner does not explain how he managed to take such action

-6-

after the limitation period had expired, but could not do so earlier. Under these facts, no basis exists for belated commencement of the statute of limitations under § 2244(d)(1)(B).

Petitioner further alleges that the limitations period should begin to run on the date "on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." (Docket Entry 2 at 56.) In Petitioner's brief following Respondent's Motion to Dismiss, he states that he "could not through due diligence find support for the factual predicate of his claim until [he] learned of the facts and laws of North Carolina . . . ." (Docket Entry 11 at 8). Petitioner does not provide any further details regarding what new "facts" he discovered, when he discovered these new facts or what steps he took to exercise "due diligence." (See id.) Where a petitioner makes only conclusory and unsupported allegations, a delayed commencement of the statute of limitations under § 2244(d)(1)(D) does not apply. See Farabee v. Clarke, No. 2:12-cv-76, 2013 WL 1098098, at *3 (E.D. Va. Feb. 19, 2013) (unpublished) (finding subparagraph (D) inapplicable where petitioner's "threadbare" allegations failed to explain why factual predicate could not have been discovered earlier or provide any dates by which court could calculate limitations period) (quoting Allen v. Hancock, No. 1:11CV123-HSO-JMR, 2011 WL 7461993, at *2 (S.D. Miss. Nov. 9, 2011) (unpublished)); Norrid v. Quarterman, No. 4:06-CV-403-A, 2006 WL 2970439, at *1 (N.D. Tex. Oct. 16, 2006) (unpublished) (concluding that petitioner bears burden of

-7-

establishing applicability of section 2244(d)(1)(D), including his due diligence, and that conclusory statements do not satisfy burden); Redmond v. Jackson, 295 F. Supp. 2d 767, 772 (E.D. Mich. 2003) (holding that unsupported and conclusory arguments do not warrant application of § 2244(d)(1)(D)); Frazier v. Rogerson, 248 F. Supp. 2d 825, 834 (N.D. Iowa 2003) (finding subparagraph (D) inapplicable where petitioner "never identifie[d] when or how he discovered his 'new evidence,'" and noting that petitioner's "contention that he could not have discovered it sooner with due diligence is unsupported and conclusory"). Moreover, the date on which he discovered the legal significance of his claims under North Carolina law is immaterial, as "the trigger in § 2244(d)(1)(D) is (actual or imputed) discovery of the claim's 'factual predicate', not recognition of the facts' legal significance." Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000).

Furthermore, the facts underlying Petitioner's claims include (1) defective indictments; (2) untruthful victim testimony; (3) community and prosecutorial vindictiveness at the time of indictment; (4) prejudicial evidentiary rulings prior to sentencing; and (5) ineffective assistance of trial counsel. (See Docket Entry 2 at 8-9, 12, 15-16, 19-20, 23, 26-27, 31-32, 35-37, 40-42, 45-49.) Petitioner knew, or should have known with the exercise of due diligence, all of these facts at the time of his convictions on November 9, 1992.

As the record does not reveal any grounds for concluding that subparagraphs (B), (C), or (D) of § 2244(d)(1) apply in this case,

-8-

Petitioner's one-year limitation period commenced on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A). The Court thus must ascertain when direct review (or the time for seeking direct review) of Petitioner's underlying conviction ended.

Here, the trial court entered judgment against Petitioner on November 9, 1992, and Petitioner did not pursue a direct appeal. (See Docket Entry 2-2 at 21-26; Docket Entry 2, ¶ 9.) Petitioner's convictions thus became final in November 1992, several years before the enactment on April 24, 1996 of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d)(1). Under such circumstances, Petitioner's one-year limitations period expired one year after AEDPA's effective date, i.e., on April 24, 1997, see Hernandez v. Caldwell, 225 F.3d 435, 438-39 (4th Cir. 2000) (holding that, where convictions became final prior to enactment of AEDPA, petitioner had until April 24, 1997 to file a federal habeas petition), over 15 years before Petitioner brought this action under § 2254.[4]

Petitioner did make certain state collateral filings, which generally toll the federal habeas deadline for "the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest court (whether decision on the merits,

---

[4] Petitioner asserts that because his convictions occurred in 1992, retroactive application of AEDPA to his convictions would violate the prohibition against ex post facto laws. (Docket Entry 2 at 56.) The Fourth Circuit's decision in Hernandez cited above forecloses this argument.

-9-

denial of certiorari, or expiration of the period of time to seek further appellate review)," Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999). Petitioner, however, did not make any collateral filings in the state courts until March 28, 2012, well after his time to file a federal habeas claim had already expired. State filings made after the federal limitations period has passed do not restart or revive the filing period. See Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000).

Petitioner advances several reasons why he believes the Court should consider the Petition despite its untimeliness. (Docket Entry 11 at 4-10.) In other words, Petitioner requests equitable tolling, which doctrine the Supreme Court has ruled applicable in this context, Holland v. Florida, 560 U.S. ___, ____, 130 S. Ct. 2549, 2562 (2010). Equitable tolling may apply when a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)) (emphasis added).

First, Petitioner asserts that "equitable tolling applie[s] because counsel grossly misled petitioner." (Docket Entry 11 at 4.) Petitioner claims his trial counsel advised him that "he would be sentenced to 20 years, which in turn would be cut in half to 10 years and would be home with his family in 3 to 8 years as long as he kept his nose clean and stay[ed] out of trouble." (Id. at 6.) This argument lacks merit.

-10-

In general, "[m]isleading or incorrect advice provided by counsel is an insufficient justification for the application of equitable tolling." Studevant v. Clarke, No. 1:11cv1242 (GBL/JFA), 2012 WL 1901288, at *4 (E.D. Va. May 24, 2012) (unpublished) (citing Rouse v. Lee, 339 F.3d 238, 248 (4th Cir. 2003)); see also Hutchinson v. Florida, 677 F.3d 1097, 1100 (11th Cir. 2012) ("If attorney miscalculation, error, or negligence were enough for equitable tolling, the § 2244(d) statute of limitations would be tolled to the brink of extinction ...."). "[T]o rise to the level necessary to constitute an 'extraordinary circumstance,' ... attorney negligence must be so egregious as to amount to an effective abandonment of the attorney-client relationship." Rivas v. Fischer, 687 F.3d 514, 538 (2d Cir. 2012); see also Maples v. Thomas, 565 U.S. \_\_\_, \_\_\_-\_\_\_ & n.7, 132 S. Ct. 912, 922–27 & n.7 (2012) (holding that attorneys' abandonment of petitioner constituted cause to overcome procedural default and remarking that distinction between attorney negligence and attorney abandonment should apply equally in equitable tolling context). Petitioner has not alleged facts amounting to abandonment by his trial counsel.

Moreover, Petitioner alleges only that his trial counsel misadvised him about the length of his sentence. Petitioner does not allege that his trial counsel ever represented him with regard to his post-conviction petitions or that such counsel misrepresented the availability of federal habeas relief or any deadlines pertaining thereto, circumstances of the sort relevant to equitable tolling analysis, see Maples, 565 U.S. at \_\_\_-\_\_\_, 132 S.

-11-

Ct. at 922-27 (discussing post-conviction counsel's failure to appeal and total abandonment of petitioner); Holland, 560 U.S. at ___, 130 S. Ct. at 2564 (addressing post-conviction counsel's failure to communicate with petitioner, to inform him about state supreme court's adverse decision and to file federal habeas petition on time despite petitioner's repeated urging to do so). Petitioner knew of his trial counsel's alleged inaccurate advice about sentencing in 1992, when he received a sentence considerably longer than the sentence he claims his counsel predicted, yet Petitioner made no post-conviction filings in any court until nearly 20 years had elapsed. Petitioner's lack of diligence in pursuing this claim forecloses the application of equitable tolling. "'[E]quity is not intended for those who sleep on their rights.'" Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990).

Next, Petitioner claims entitlement to equitable tolling because he "has a disability due to the fact [he] is in prison (civil disability)." (Docket Entry 11 at 7) (internal quotation marks omitted.) However, one's status as an unrepresented prisoner does not constitute grounds for equitable tolling. See United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004); March v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2001); Turner v. Johnson, 177 F.3d 390, 392 (5th Cir. 1999); see also Gray v. Lewis, No. 1:11CV91, 2011 WL 4022787, at *3 (M.D.N.C. Sept. 9, 2011) (unpublished) (citing Hood v. Jackson, No. 5:10-HC2008-FL, 2010 WL 4974550, at *2 (E.D.N.C. Dec. 1, 2010) (unpublished), and Dockery v. Beck, No.

1:02CV00070, 2002 WL 32813704, at *2 (M.D.N.C. Aug. 1, 2002) (Beaty, J., adopting recommendation of Eliason, M.J.) (unpublished)), adopted, slip op. (M.D.N.C. Nov. 4, 2011) (Beaty, C.J.)).

Finally, Petitioner appears to argue that the Court should treat his Petition as timely because the State cannot show any prejudice from his late filing, citing Hannon v. Maschner, 845 F.2d 1553, 1555-57 (10th Cir. 1988), and Gratzer v. Mahoney, 397 F.3d 686, 690 (9th Cir. 2005). (Docket Entry 11 at 4-5.) This argument lacks merit.

AEDPA, effective April 24, 1996, mandates the one-year limitations period at issue here. AEDPA superceded Rule 9(a) of the Rules Governing Section 2254 Cases in the United States District Courts and prior practice as to the doctrine of laches in habeas cases, both of which involved a determination of prejudice to the State as a result of the delay. See Langley v. Director, Dep't of Corr., No. 2:09cv436, 2010 WL 2483876, at *6 (E.D. Va. May 28, 2010) (unpublished).[5] Under AEDPA, the "prejudice" to Respondent has no bearing on the timeliness analysis.[6] Petitioner clearly did not file his Petition within the one-year limitations

---

[5] Rule 9(a) provided that "[a] petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in the ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred."

[6] The Hannon and Gratzner cases are inapposite because both involved convictions and § 2254 petitions that predated the passage of AEDPA.

-13-

period proscribed by AEDPA and, as discussed above, he has failed to establish any grounds warranting equitable tolling.

In sum, the Petition is untimely.

**IT IS THEREFORE ORDERED** that Respondent's Motion to Dismiss (Docket Entry 5) is **GRANTED,** that Petitioner's Motion to Grant on Statutes to Habeas Corpus (Docket Entry 10) is treated as part of Petitioner's response in opposition to dismissal and thus is **TERMINATED,** that the Petition (Docket Entry 2) is **DISMISSED,** and that this action is **DISMISSED** pursuant to a contemporaneously entered judgment.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

April 19, 2013